## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| INDEPENDENCE BARBERSHOP, LLC, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC. and TWIN CITY FIRE INSURANCE COMPANY,<br><br>        Defendants. | Case No.: 1:20-cv-555<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Independence Barbershop, LLC ("Plaintiff" or "Independence Barbershop") brings this case on behalf of itself and all others similarly situated, against Defendants The Hartford Financial Services Group, Inc. and Defendant Twin City Fire Insurance Company (collectively, "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      Independence Barbershop is a full-service barbershop and grooming supply retailer. Like many businesses, including barbershops in Texas, Independence Barbershop was forced to significantly curtail its services due to the COVID-19 Pandemic (also known as the "Coronavirus" or "SARS-CoV-2"), the executive order issued by the Governor of Texas, and the orders by the County Judge of Travis County as described below.

2.      Independence Barbershop sought to protect itself – and reasonably believed that it had protected itself – in the event that its operations were suspended or reduced for reasons outside of its control beyond just damage to the physical premises (such as fire), by purchasing an "all-risk" property Spectrum Business Owner's Policy through Defendants (the "Special Property

Coverage Form"). *See* Exhibit A. An "all-risk" property policy provides broad coverage for losses resulting from any cause unless expressly excluded.

3.      Among other coverages, the Special Property Coverage Form specifically includes coverage for Business Income for twelve (12) months of actual loss sustained. The policy also provides coverage for Action of Civil Authority for thirty (30) days. The Special Property Coverage Form (by way of endorsement) also provides Limited Fungi, Bacteria or Virus coverage for thirty (30) days.

4.      The Business Income, and Civil Authority coverages purchased by Plaintiff are not subject to any relevant exclusion for losses caused by pandemics like COVID-19. But even to the extent a virus exclusion would apply, Defendants have rendered this exclusion inapplicable by expressly providing for limited Time Element Coverage when a cessation of business operations is caused by a "virus".

5.      Notwithstanding this coverage, when Plaintiff suffered an actual loss of Business Income as a result of a covered cause of loss and needed her Business Income coverage, Defendants wrongfully – and in contravention of the policy – denied Plaintiff's insurance claim. *See* Exhibit B.

6.      Plaintiff is not alone. Defendants have systematically refused to pay all their insureds under their Business Income and Civil Authority coverages for losses suffered due to COVID-19 (and related civil authority orders), regardless of whether the implicated insurance policy has an applicable pandemic exclusion or not, and regardless of whether the policy had applicable "Limited Fungi, Bacteria Or Virus Coverage[.]"

## PARTIES

7.      Plaintiff Independence Barbershop, LLC is a limited liability corporation registered in Texas with its principal place of business in Manchaca, Texas. Independence Barbershop primarily provides barber and related services.

8.      Defendant The Hartford Financial Services Group, Inc. ("The Hartford") is a Delaware company with its principal place of business in Hartford, Connecticut. The Hartford is a financial holding company for a group of insurance and non-insurance subsidiaries.

9.      Defendant Twin City Fire Insurance Company ("Twin City") is an Indiana company with principal places of business in Indiana and Connecticut. Twin City is a subsidiary of The Hartford. At all relevant times, Twin City sold and issued insurance policies in the State of Texas, including, without limitation, to Independence Barbershop.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because Plaintiff, as well as other members of the Classes, and Defendants are citizens of different states, and because: (a) the Classes consist of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to Plaintiff's claim.

11.      This Court has personal jurisdiction over Defendants, because a substantial portion the alleged wrongdoing occurred in the state of Texas, and Defendants have sufficient contacts with the state of Texas. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## FACTUAL BACKGROUND

12.      Plaintiff paid an annual premium of $1,206.00 to Defendants, who issued to Plaintiff a renewal of Policy No. 65 SBA AB0169, for the annual period beginning August 2, 2019.

Plaintiff performed all its obligations under the Policy, including the payment of premiums. The Covered Property is 12109 Twin Creek Rd, Manchaca, Texas, 78652.

13.     Some insurance policies cover specific and identified risks, such as tornadoes, hurricanes, or fires. However, most property policies in the United States of America, including those sold by Defendants, are "all-risk" policies. These types of policies cover _**all**_ risks of loss, and only exclude narrow and specifically enumerated risks.

14.     In the Special Property Coverage Form (the policy issued to Plaintiff), Defendants agreed to pay "for direct physical loss of or physical damage to Covered Property ... caused by or resulting from a Covered Cause of Loss." A Covered Cause of Loss is defined as all "RISKS OF DIRECT PHYSICAL LOSS" except those that are expressly and specifically listed in the Limitations or Exclusions sections of the policy. *See* Exhibit A, Special Property Coverage Form, at A.3.

15.     Losses due to the COVID-19 Pandemic and the Closure Orders (defined below) are a Covered Cause of Loss under Defendants' policies with the Special Property Coverage Form because they constitute RISKS OF DIRECT PHYSICAL LOSS and are not otherwise excluded.

16.     In the Special Property Coverage Form, apart from general coverage, as part of additional coverages, Defendants agreed to pay for Plaintiff's actual loss of Business Income sustained due to the suspension of Plaintiff's operations caused by direct physical loss of *or* physical damage to property. Specifically, the policy provides:

o. **Business Income**

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

(4) Business Income means the:

(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

(b) Continuing normal operating expenses incurred, including payroll.

*See* Exhibit A, Special Property Coverage Form, at A.5.o.

17.    The Special Property Coverage Form also includes Civil Authority coverage, under which Defendants agreed to pay for the actual loss of Business Income sustained when access to the scheduled premises is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area. *See* Exhibit A, Special Property Coverage Form, at A.5.q ("This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'").

18.    The Special Property Coverage Form also includes Time Element Coverage when business operations are suspended because of "loss or damage to property caused by 'fungi', wet or dry rot, bacteria or virus[.]" *See* Exhibit A, Limited Fungi, Bacteria or Virus Coverage, Form SS 40 93 07 05, at B.1.f.  (If a "suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days[.]")

19.    As explained below, the COVID-19 Pandemic throughout the State of Texas and within the Austin metropolitan area where Plaintiff is located, and the related shut down orders

issued by local, state, and federal authorities constitute a Covered Cause of Loss triggering the Business Income and Civil Authority provisions of the Special Property Coverage Form.

**A.** *Covered Cause of Loss*

    **1.**     **<u>COVID-19 Pandemic</u>**

20.    On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a "Public Health Emergency of International Concern."[1] Later, on March 11, 2020, the WHO declared COVID-19 a global health pandemic. On March 13, 2020, President Trump declared a national emergency in the face of a growing public health and economic crisis due to the global COVID-19 Pandemic.

21.    In the State of Texas alone, there have been over 52,268 reported cases of COVID-19, and approximately 1,440 related deaths.[2]

22.    In Travis County, in which Independence Barbershop is located, there have been over 2,644 confirmed cases of COVID-19, and 82 deaths.[3]

23.    According to published research, the virus that causes COVID-19 remains stable and transmittable for up to three hours in aerosols, up to four hours on copper, up to twenty-four hours on cardboard, and up to two to three days on plastic and stainless steel.[4]

---

[1] https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (last visited May 21, 2020).

[2] https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83 (last visited May 21, 2020).

[3] *Id.*

[4] https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last visited May 21, 2020).

2. **The Closure Orders**

24.     COVID-19 has caused civil authorities nationwide, including civil authorities with jurisdiction over Plaintiff's business, to issue orders requiring the suspension of businesses to slow down the spread of the virus.

25.     Nearly every state in the country has or had an order restricting the operation of non-essential businesses and requiring social distancing. At the peak "the number of Americans under instructions to stay at home has persisted at an astonishing level…accounting for a stunning 95 percent of the population." *See* https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html.

26.     On March 13, 2020, Texas Governor Greg Abbott issued a Proclamation recognizing that COVID-19 "has been recognized globally as a contagious respiratory virus" and that it "poses an imminent threat of disaster". Accordingly, Governor Abbott "declare[d] a state of disaster for all counties in Texas."[5]

27.     On March 19, 2020 Governor Greg Abbott issued an Executive Order mandating that "[i]n accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms or massage parlors[.]"[6]

---

[5]https://gov.texas.gov/news/post/governor-abbott-declares-state-of-disaster-in-texas-due-to-covid-19 (last visited May 21, 2020).
[6] https://gov.texas.gov/news/post/governor-abbott-issues-executive-orders-to-mitigate-spread-of-covid-19-in-texas (last visited May 21, 2020).

28.    On March 24, the County Judge of Travis County issued an order requiring all individuals living in Travis County to shelter at their place of residence and requiring all non-Essential Businesses to cease activities (with few limited exceptions).[7]

29.    Earlier the County Judge of Travis County had issued several orders prohibiting certain gatherings and recommending social distancing. For example, on March 17, the County Judge declared[8]:

> **SECTION 2.** Effective as of 12:00 p.m. (noon) on March 17, 2020, and continuing until May 1, 2020, unless terminated or modified by an earlier Order, the County Judge of the County of Travis, deems it in the public interest to **PROHIBIT any public or private Community Gatherings (as defined in Section 3, below) anywhere in TRAVIS COUNTY.**

30.    On March 31, 2020, Governor Abbott issued a state-wide executive order requiring that "every person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not in the same household". And mandating that "people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms, massage establishments, tattoo studios, piercing studios, or cosmetology salons[.]" Barbershops, including Independence Barbershop were mandated to close.[9]

31.    On May 5, 2020, Governor Abbott issued an executive order that allowed "reopened services" to return to business under certain guidelines. The May 5 executive order includes barbershops as a "reopened service". Beginning at 12:01 a.m. on May 8, 2020,

---

[7] https://www.traviscountytx.gov/news/2020/1945-novel-coronavirus-covid-19-information (last visited May 21, 2020).

[8] https://www.traviscountytx.gov/images/docs/covid-19-order-2.pdf (last visited May 21, 2020)

[9] https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/GA-14.pdf (last visited May 21, 2020). *See also* https://www.tdlr.texas.gov/covid19.htm (last visited May 21, 2020).

barbershops, like Plaintiff, were authorized to reopen if they maintain workstations at least six feet apart.[10]

32.    The purpose of the Closure Orders[11] was to slow the physical spread of COVID-19 to reduce illness and death. The Closure Orders specifically prohibited Plaintiff's business from being open and specifically prohibited access to Plaintiff's business.

### 3.    Impact of the COVID-19 Pandemic and Closure Orders

33.    Independence Barbershop and the proposed Classes defined below have suffered an actual loss of Business Income due to the suspension of operations. In the case of Independence Barbershop, it had been forced to cease the vast majority of its operations.

34.    The COVID-19 Pandemic and the Closure Orders (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS."

35.    The suspension of Plaintiff's operations was caused by "direct physical loss of *or* physical damage to property" in the form of both a loss of access to the insured property for business purposes caused by COVID-19, and the Closure Orders or the actual damage in the form of the likely physical presence of COVID-19 on or within the property.

36.    The COVID-19 Pandemic and the Closure Orders separately implicated the Civil Authority coverage, because access to the scheduled premises was prohibited by order of a civil authority as the direct result of a "RISK[] OF DIRECT PHYSICAL LOSS" to property in the immediate area of the scheduled premises from the COVID-19 Pandemic.

---

[10] https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/GA-21.pdf (last visited May 21, 2020).

[11] The March 24 Travis County order and March 31 Texas order are collectively referred to herein as the "Closure Orders".

37.    Having suffered a necessary suspension of operations, Plaintiff submitted a claim to Defendants under the policy. Defendants denied Plaintiff's claim. *See* Exhibit B.

38.    Defendants based this denial primarily on:

a.    The lack of "any direct physical loss to any property at a scheduled premises";

b.    A purported lack of "information to indicate that a civil authority issued an order as a direct result of a covered cause of loss to property in the immediate area of the scheduled premises";

c.    A "pollution" exclusion that excludes losses "caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and contaminants" under which pollution and contaminants are defined as "solid, liquid, gaseous or thermal irritant or contaminant[s]…."

d.    A "'fungi', wet rot, dry rot, bacteria and virus" exclusion that excludes the "presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria, or virus".

As summarized by Defendants:

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this business income loss is not covered. Even if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss.
>
> As we understand the facts, you are suffering from a loss of business income because you, or a business you depend on, have had to close or limit your business to help prevent the spread of COVID-19, the disease caused by the novel coronavirus.

39.    None of these purported reasons are true bases for Defendants' denial of Plaintiff's claim.

40.    First, as described above, in the context of COVID-19 and the Closure Orders, there was a suspension of operations caused by "physical loss or damage caused by or resulting from" a "Covered Cause of Loss" to property at a scheduled premise.

41.    Second, it strains credibility for Defendants to assert that they were unaware of the Closure Orders, including the Travis County Order on March 24, 2020 implicating the Civil Authority coverage.

42.    Third, to the extent that the coronavirus was present at the scheduled premise, a virus *is not* a solid, liquid, gaseous or thermal irritant or contaminant under the policy and, therefore, does not implicate the pollution exclusion.

43.    Finally, the policy does not exclude coverage for a national state of disaster like the current pandemic, which is more akin to a tornado than to proliferation of wet rot. The "virus" exclusion as written like the "wet rot" and "dry rot" exclusion (to which it is conjoined) would be understood by insureds to exclude "the presence, growth, proliferation, spread or any activity" of virus akin to rot -- not to exclude coverage in the context of a global pandemic.

44.    But even if the "virus" exclusion is understood to implicate the current COVID-19 pandemic then the policy would provide separate coverage for a suspension of operations caused by a virus when a Time Element Coverage applies. As set forth in the policy:

> **f.**   The following applies only if a Time Element Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Time Element Coverage.
>
> **(1)**   If the loss which resulted in "fungi", wet or dry rot, bacteria or virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to

> property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive. If a covered

45.     Here there is a suspension of operations necessary due to loss or damage to property caused by a virus. And while "Time Element Coverage" is not defined in the policy, "Time Element" is a broad term used in the insurance industry to include both business interruption and civil authority coverage.[12] Because the policy provides coverage for both Business Income and Civil Authority, there is limited Time Element Coverage.

46.     The simple truth is that Defendants pre-determined their intent to deny coverage for any business interruption claim related to the COVID-19 Pandemic and related civil authority orders.

47.     Boiled to its essence, the subject matter of this case is simple. Defendants have, on a widespread and class-wide basis, refused to provide Business Income and Civil Authority coverage related to the COVID-19 Pandemic and the resultant executive orders by civil authorities that have required the suspension of practice *no matter* the language or scope of coverage in any particular insurance policy.

## CLASS ALLEGATIONS

48.     Plaintiff brings this action individually and on behalf of the following similarly situated classes (the "Classes") pursuant to Rule 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

49.     Plaintiff seeks to represent nationwide classes defined as follows:

**Business Income Breach Class**

All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement; (b) suffered a suspension of their operations related to COVID-19 or the Closure Orders (or other civil authority order related to COVID-

---

[12] *See*, *e.g.*, https://www.irmi.com/term/insurance-definitions/time-element-loss (last visited May 15, 2020) (defining "Time Element Loss" as "loss resulting from in ability to use a property. Examples are business interruption, extra expense, rental income, etc.")

19) impacting the premises covered by their property insurance policy; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied coverage by Defendants.

### Civil Authority Breach Class

All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement; (b) suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by the COVID-19 Pandemic to property in the immediate area of the insureds covered property; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Civil Authority coverage by Defendants for the loss of Business Income.

50.     Plaintiff also seeks to represent nationwide declaratory judgment classes defined as

follows:

### Business Income Declaratory Judgment Class

All persons and entities with Business Income coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement that suffered a suspension of their operations related to COVID-19 or the Closure Orders Order (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy.

### Civil Authority Declaratory Judgment Class

All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement that suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by the COVID-19 Pandemic to property in the immediate area of the insureds covered property.[13]

51.     Excluded from the proposed Classes are Defendants, any parent companies,

subsidiaries, affiliates, officers, directors, legal representatives, employees, co-conspirators, all

---

[13] The two Declaratory Judgment Classes together will be referred to as the "Declaratory Judgment Classes."

governmental entities, and any judge, justice, or judicial officer presiding over this matter, as well as members of their staff and immediate families. Plaintiffs reserve the right to amend the Class definitions above or add appropriate subclasses following discovery. Also excluded from the Classes are insureds that have not complied with applicable provisions of their policies, such as the payment of premiums.

52.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

53.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Classes in a single action will provide substantial benefits to the parties and the Court.

54.     This action involves common questions, which predominate over questions affecting individual members of the Classes, including (without limitation):

- whether members of the Classes suffered a covered cause of loss based on the common policies issued by Defendants;

- whether the COVID-19 Pandemic (and/or an order of a civil authority related to the COVID-19 Pandemic) constitutes a Covered Cause of Loss;

- whether Defendants' Business Income coverage applies to a suspension of business operations caused by the COVID-19 Pandemic (and/or by an order of a civil authority related to the COVID-19 Pandemic);

- whether a suspension of business operations caused by the COVID-19 Pandemic (and/or by an order of a civil authority related to the COVID-19 Pandemic) qualifies as a suspension of business operations caused by direct physical loss of or physical damage to property;

- whether the "virus" exclusion precludes losses related to the COVID-19 Pandemic;

- whether the limited Time Element Coverage when a partial slowdown or complete cessation of business operations is caused by a "virus" implicates coverage;

- whether an order by a civil authority related to the COVID-19 Pandemic qualifies an insured for Civil Authority coverage;

- whether members of the Classes sustained damages as a result of Defendants denying their claims made under the common policies; and

- whether Defendants breached its contracts of insurance by denying Class members' Business Income and Civil Authority claims related to the COVID-19 Pandemic.

55.    Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

56.    Plaintiff's claims are typical of those of the members of the Classes because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct, including the systematic denial of insurance coverage related to Business Income insurance and the COVID-19 Pandemic.

57.    Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Class members, and has retained counsel competent and experienced in class action and consumer protection litigation.

58.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small enough such that, absent representative litigation, it would be infeasible for many members of the Classes to redress the wrongs done to them. Moreover, individualized litigation would create potential for inconsistent judgments on identical issues and increase the delay and expense to the parties and the Court. By

15

contrast, the class action device presents far fewer management difficulties, and provides the benefits of adjudication by a single court.

59.    As a result of the foregoing, class treatment under Federal Rule of Civil Procedure 23(b)(3) is appropriate.

60.    Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(1). Plaintiff seeks class-wide adjudication related to Defendants' Business Income, and Civil Authority coverages. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent adjudications.

61.    Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief.

## CLAIMS FOR RELIEF

### CLAIM I: BREACH OF CONTRACT - Business Income Coverage
### (Plaintiff Individually and on Behalf of the Business Income Breach Class)

62.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

63.    Plaintiff brings this claim against Defendants individually and on behalf of the members of the Business Income Breach Class.

64.    Plaintiff's insurance policy, as well as those of the members of the Business Income Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Business Income Breach Class Members' losses for claims covered by Defendants' all-risk policy.

65.     The Special Property Coverage Form states that Defendants "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'... The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises'…caused by or resulting from a Covered Cause of Loss."

66.     "Operations" is defined as "business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises.'"

67.     Suspension is defined (in relevant part) as "The partial slowdown or complete cessation of your business activities[.]"

68.      "Business Income" is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

69.     The COVID-19 Pandemic, and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Orders) caused "direct physical loss of or damage to" the "Covered Property" under the Plaintiff's policy, and the policies of the other Business Income Breach Class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension and reduction of operations during a period of restoration.

70.     Losses caused by the COVID-19 Pandemic, and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Orders) thus triggered the Business Income provision of Plaintiff's and the other members of the Business Income Breach Class' insurance policies.

71.     Plaintiff and the members of the Business Income Breach Class have complied with all applicable provisions of their policies.

72.     Plaintiff and the members of the Business Income Breach Class made timely claims under their property insurance policies issued by Defendants.

73.     Defendants have breached their coverage obligations under Plaintiff and the Business Income Breach Class Members' policies by denying coverage for any Business Income losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders).

74.     As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Business Income Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM II: BREACH OF CONTRACT – Civil Authority Coverage
### (Plaintiff Individually and on Behalf of the Civil Authority Breach Class)

75.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

76.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Civil Authority Breach Class.

77.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Civil Authority Breach Class Members' losses for claims covered by the policy.

78.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class are extended to apply to losses "sustain[ed] when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'"

18

79.     The COVID-19 Pandemic caused civil authorities to issue the Closure Orders, which specifically prohibited access to Plaintiff and the Civil Authority Breach Class Members' scheduled premises based on "RISKS OF DIRECT PHYSICAL LOSS" to property in the immediate area of the scheduled premise.

80.     Losses caused by the COVID-19 Pandemic thus triggered the Civil Authority provision of Plaintiff and the Civil Authority Breach Class Members' insurance policies.

81.     Plaintiff and the Civil Authority Breach Class Members have complied with all applicable provisions of their policies.

82.     Plaintiff and the Civil Authority Breach Class Members made timely claims under their property insurance policies issued by Defendants.

83.     Defendants have breached their coverage obligations under Plaintiff and the Civil Authority Breach Class Members' policies by denying coverage for any Civil Authority losses incurred in connection with the COVID-19 Pandemic and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Orders).

84.     As a direct and proximate result of Defendants' breaches, Plaintiff and the Civil Authority Breach Class Members have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM III: DECLARATORY JUDGMENT – Business Income Coverage
### (Claim Brought on Behalf of the Declaratory Judgment Classes)

85.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

86.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Declaratory Judgment Classes.

87.     Plaintiff's policy, as well as those of the members of the Declaratory Judgment Classes, are contracts under which premiums were paid to Defendants in exchange for promises to pay losses for claims covered by their insurance policies.

88.     Plaintiff and the members of the Declaratory Judgment Classes have complied with all applicable provisions of the policies.

89.     Defendants have denied claims related COVID-19 and/or orders of civil authority related to COVID-19 (like the Closures Orders) on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Declaratory Judgment Classes have filed a claim.

90.     An actual case or controversy exists regarding Plaintiff and the Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to provide reimbursements for the full amount of losses incurred by Plaintiff and the Declaratory Judgment Classes Members in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders).

91.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiff and the Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with necessary interruption of their businesses due to the presence of the COVID-19 Pandemic and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Orders) are insured losses under their policies; and

b.  Defendants are obligated to pay Plaintiff and the Business Income Declaratory Judgment Class Members for the amount of the Business Income losses incurred in connection with the period of restoration and the necessary interruption of their businesses at their insured property stemming from the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders).

92.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.    Plaintiff and the Civil Authority Declaratory Judgment Class Members' Business Income losses caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property are insured losses under their policies; and

b.    Defendants are obligated to pay Plaintiff and the Civil Authority Declaratory Judgment Class for the amount of the Business Income losses incurred and to be incurred caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendants as follows:

i.    Entering an order certifying each of the proposed Classes;

ii.    Entering an order designating Plaintiff as Class Representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

iii.    Entering judgment on Counts I, and II in favor of Plaintiff, the Business Income Breach Class, the Civil Authority Breach Class, and awarding damages for breach of contract in an amount to be determined at trial;

iv.    Entering declaratory judgments on Count III in favor of Plaintiff and the Declaratory Judgment Classes (as set forth in Count III);

v.    Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

vi.    Ordering Defendants to pay reasonable attorneys' fees and costs of suit; and

vii.    Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:   May 22, 2020

s/ Hans W. Lodge
Hans W. Lodge, Bar # 0397012
**BERGER MONTAGUE PC**
43 SE Main St, Suite 505
Minneapolis, MN 55414
Tel: 612-607-7794
Email: hlodge@bm.net

Shanon J. Carson*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-4656
Email: scarson@bm.net

Alex R. Straus*
**GREG COLEMAN LAW**
16748 McCormick Street
Los Angeles, CA 91436
Tel: 917-471-1894
Email : alex@gregcolemanlaw.com

Greg F. Coleman*
Will Ladnier*
Jonathan B. Cohen*
**GREG COLEMAN LAW**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Email : greg@gregcolemanlaw.com
        will@gregcolemanlaw.com
        jonathan@gregcolemanlaw.com

Daniel K. Bryson*
Patrick M. Wallace*
**WHITFIELD BRYSON LAW LLP**
900 W. Morgan Street
Raleigh, NC 27605
Tel: 919- 600-5000
Email: dan@whitfieldbryson.com
        pat@whitfieldbryson.com

*pro hac vice forthcoming

*Attorneys for Plaintiff and the putative classes*